IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| HANNAH COPELAND, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 240623R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals Defendant's Notice of Assessment dated April 23, 2024, (Def's Ex G). Plaintiff challenges Defendant's denial of charitable contribution deductions. A remote trial was held on March 20, 2025, via Webex. Hannah Copeland appeared and testified on her own behalf. Blake Ritz (Ritz), auditor, appeared on behalf of Defendant. Plaintiff's Exhibits 1 to 22 and Defendant's Exhibits A to N were received into evidence.

## I. STATEMENT OF FACTS

Plaintiff claimed $14,259 in charitable donations on her 2020 individual income tax return. (Ptf's Ex 12 at 4.) Of that amount, $159 was in cash, while $14,100 was in noncash donations. (*Id.*) Subsequent to an audit, Plaintiff and Defendant met for a conference. During the conference, Plaintiff submitted two checks to support her cash donation deduction, with a total value of $170, which Defendant allowed. (Def's Ex E at 3.) Plaintiff also offered evidence of her noncash contributions to Goodwill and Brightside Animal Center at the conference. (Def's Ex E at 2.) Plaintiff tracked those donations contemporaneously by keeping donation receipts and recording donation details in a notebook. (Ptf's Ex 14; Ptf's Ex 15.)

At trial, Plaintiff testified that, during the audit, Ritz suggested compiling a spreadsheet to show the condition of donated items. Plaintiff did so, and she listed conditions ranging from

"GOOD" to "NEW." (Ptf's Ex 20.) Plaintiff listed "REPLACEMENT COST NEW" as the method used for determining fair market value (FMV) of 34 donated items and "REPLACEMENT COST USED" as the method used for 3 items.[1] (*Id.*) The listed acquisition dates of these items vary, with the oldest date being either "Nov-09" or "2010" and the most recent date being December 10, 2019.[2] (*Id.*) Many line items state "VARIOUS" as the acquisition date. (*Id.*)

In a separate table, Plaintiff summarized the values recorded in her notebook by donation date. (Ptf's Ex 15; Ptf's Ex 16.) She assigned each donated item to one of four categories: clothing, household, furniture, and collectibles. (*Id.*) With the exception of three minor corrections to totals, indicated with brackets, that table is reproduced here:

| Date | Clothing | Household | Furniture | Collectibles | Total |
|---|---|---|---|---|---|
| 01/12/20 | $1,200 | $617 | $883 | | $2,700 |
| 02/12/20 | | $750 | | | $750 |
| 03/01/20 | $900 | $600 | | | $1,500 |
| 08/21/20 | $100 | | $2,700 | $1,000 | $3,800 |
| 09/14/20 | $25 | $1,025 | $50 | | $1,100 |
| 11/02/20 | $750 | $200 | $500 | | $1,450 |
| 12/03/20 | $350 | | $850 | | $1,200 |
| 12/09/20 | | | | $500 | $500 |
| 12/14/20 | $1,100 | | | | [$1,100] |
| **Total:** | **[$4,425]** | **$3,192** | **$4,983** | **[$1,500]** | **$14,100** |

(Ptf's Ex 16.)

/ / /

/ / /

/ / /

---

[1] Plaintiff's spreadsheet has line-item entries numbered from 1 to 36, but there are two lines numbered 35, resulting in a total of 37 entries. (*Id.*)

[2] Regarding the "Nov-09" entry, it is unclear whether this indicates November 2009, or November 9th of an unspecified year. (Ptf's Ex 20 at 1.)

Plaintiff's notebook describes donating the following property:

| Donation Date | Donated Property |
|---|---|
| 01/12/20 | Clothing, lamps, coffee table, ceiling fans, electric can opener |
| 02/12/20 | Sony TV, Panasonic VHS/DVD player, Oster blender, toaster |
| 03/01/20 | Clothing, vacuum, KitchenAid microwave, "kitchen drawer misc." |
| 08/20/20 | Clothing, set of history books |
| 08/21/20 | King size Tempur-Pedic mattress set |
| 09/14/20 | Clothing, Samsung washing machine, twin box spring |
| 11/02/20 | Clothing, kitchen plate set, oak bookshelf, kids dresser |
| 12/03/20 | Clothing, twin log bed frame |
| 12/09/20 | Walkie talkie set, watch, wooden kitchen with play food, charms, kids books |
| 12/14/20 | Clothing for prom/special occasion |

(Ptf's Ex 15 at 3-8.)

In determining replacement values, Plaintiff used Facebook Marketplace listings as sources for comparable prices for used goods. (Ptf's Ex 19 at 1-33.) Those listings were for a dining table and chairs, a recliner, an office desk, an ottoman, a shop cart, toys, kids' jackets, a drone, art and craft supplies, home decor, a bedroom set, jewelry, and several dresses. (*Id.*)

Plaintiff also included five original purchase receipts with her exhibits. (Ptf's Ex 18 at 18-21, 23.) The first receipt is from Wilco and establishes that a pair of boots was purchased for $169.99 but does not contain a legible date. (*Id.* at 18.) The second receipt is from Lowe's and is dated September 19, 2019. (*Id.* at 19.) That receipt includes a line for an "MT 5.3-CU FT TL WASHER MV" for $663.03. (*Id.*) The third receipt is illegible. (*Id.* at 20.) The fourth receipt is from Best Buy and dated in December 2014. (*Id.* at 21.) The line-item descriptions are mostly illegible but appear to be nondescriptive part numbers. (*Id.*) The last receipt is from Lowe's, but the item descriptions and date are illegible. (*Id.* at 23.)

In addition to those receipts, Plaintiff provided screenshots of several shipping notifications from Amazon. (Ptf's Ex 18 at 1-17.) Some of the screenshots include payment or

billing information such as the last four digits of the credit card used or billing address. (*e.g.*, *id.* at 4-5.) The screenshots contain shipping dates, but not delivery dates or delivery confirmations. (*See id.* at 1-17.) Plaintiff did not offer any evidence linking the various screenshots to particular donation dates.

Plaintiff provided contemporaneous written acknowledgements (CWAs) from donation recipients for all her donations except the one dated September 14. (Ptf's Ex 14.) According to Plaintiff's notebook, the items donated on September 14 were given to Brightside Animal Center and included a washing machine. (Ptf's Ex 15 at 6.)

## II.    ANALYSIS

The issues presented are whether Plaintiff established the FMV of her donated property and whether she satisfied the substantiation requirements of Internal Revenue Code (IRC) section 170 and corresponding Treasury Regulations.

Oregon's income tax system generally mirrors federal tax provisions. *Johnson v. Dept. of Rev.*, TC-MD 230350R, 2025 WL 842217 at *2 (Or Tax M Div, Mar 13, 2025). "Insofar as is practicable * * * the department shall * * * follow the administrative and judicial interpretations of the federal income tax law." ORS 314.011(3).[3] Deductions are a "matter of legislative grace," and the taxpayer bears the burden of "clearly showing the right to the claimed deduction." *INDOPCO, Inc. v. Comm'r,* 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992) (internal quotations omitted).

Here, Plaintiff has failed to clearly show her right to the claimed deduction for at least two reasons. First, her valuation method is inappropriate for the context. Second, Plaintiff has not substantiated certain details the law requires when taxpayers claim charitable deductions.

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2019 edition.

The court analyzes each of these reasons in more detail, beginning with Plaintiff's valuation method.

A.      *Valuation of Donated Property*

A taxpayer who claims a deduction for a charitable donation of more than $500 must establish the FMV of the donated property. Treas Reg § 1.170A-16(c)(3)(iv)(D). Treasury Regulation section 1.170A-1(c)(2) defines FMV as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." It follows that the purchase price or replacement cost *may* sometimes be evidence of FMV, but *only* if it corresponds to what a willing and knowledgeable buyer would actually pay in the marketplace. *See Gardner v. Comm'r*, 114 TCM (CCH) 232, 2017 WL 3670197 at \*8 (2017) ("For us to eschew comparable sales in favor of replacement cost, the taxpayer must establish, not only the absence of an active market for comparable items, but also a 'probative correlation' between replacement cost and FMV.")

"Courts have consistently recognized that, in general, comparable sales constitute the best evidence of market value." *United States v. 320.0 Acres of Land, More or Less in Monroe County, State of Fla.*, 605 F2d 762, 798 (5th Cir 1979) (collecting cases at *id.* n 61). For items such as used clothing and household goods, this court has recognized that replacement cost new is not a reliable measure of FMV. *Gordin v. Dept. of Rev.*, TC-MD 050698C, 2006 WL 1083381 at \*3 (Or Tax M Div, Apr 25, 2006) (citing Internal Revenue Service (IRS) Publication 561).[4]

/ / /

---

[4] "The FMV of used household goods, such as furniture, appliances, and linens, is usually much lower than the price paid when new." IRS Publication 561 (Feb 2020). "Used clothing and other personal items are usually worth far less than the price you paid for them." *Id.*

In valuing her donations, Plaintiff relied almost exclusively on "replacement cost new," using as her benchmark either (1) original Amazon retail prices of her donated goods when they were new, or (2) current Facebook Marketplace comparables. The original prices paid to Amazon do not establish current FMV because they do not reflect that the donated items were used and, in some cases, several years old. Plaintiff also did not offer testimony or documentary evidence establishing which comparables she used when estimating values for her various donations. For instance, Plaintiff also failed to demonstrate how the Facebook Marketplace listings correspond to her donated items. Multiple comparables provided are for items not even listed in Plaintiff's notebook. As a result, her valuations do not establish FMV. The failure to prove FMV is one reason the court holds that Plaintiff's claim for noncash deductions is denied.

B.      *Aggregation and Substantiation Requirements*

The court turns to its second reason for denying Plaintiff's appeal: insufficient substantiation. Taxpayers claiming charitable donation deductions must satisfy statutory substantiation requirements. IRC section 170(f)(11)(F) requires different levels of documentation depending on the aggregate value of similar items donated. Similar items are defined as "property of the same generic category or type." Treas Reg § 1.170A-13(c)(7)(iii). Congress's intent in imposing heightened reporting requirements, including the requirement to aggregate small donations of similar property into a single total, was "to give the IRS tools that would enable it to identify inflated charitable contribution deductions." *Oakhill Woods, LLC v. Comm'r*, 119 TCM (CCH) 1144, 2020 WL 730895 at *7 (2020).

Substantiation requirements become more stringent as the total value of donations increases. Below $250, basic records suffice. *See* Treas Reg § 1.170A-16(a)(1) (requiring (i) the name and address of the donee, (ii) the date of the contribution, and (iii) a description of

the property in sufficient detail under the circumstances). For contributions of $250 or more, the taxpayer must obtain a CWA from the donee organization. IRC § 170(f)(8)(A).

For a contribution over $500, the taxpayer must substantiate the contribution with a completed Form 8283. IRC § 170(f)(11)(B); Treas Reg § 1.170A-16(c)(3). A completed Form 8283 includes, among other things, the FMV of the property on the date the contribution was made and the cost or other basis of the property. Treas Reg § 1.170A-16(c)(3)(iv)(D), (F).

In this case, Plaintiff asserts her clothing donation totaled $4,425, household goods totaled $3,192, furniture totaled $4,983, and collectibles totaled $1,500. The court is satisfied with this aggregation. Each category exceeds $500, so Plaintiff was required to maintain and provide detailed acquisition records to substantiate the deduction claimed on her tax return. While she did obtain CWAs and file Form 8283s with her return, Plaintiff failed to substantiate basic required information. Specifically, for all donated items except one, Plaintiff failed to establish acquisition cost. Even where Plaintiff provided original receipts, information is incomplete or illegible. For instance, the receipt from Lowe's for the washing machine does have a legible date and amount, but Plaintiff did not provide a CWA for that donation.

C.    *Summary*

Plaintiff's deductions must be denied for two independent reasons: (1) improper valuation method, and (2) failure to meet substantiation requirements. Plaintiff's reliance on replacement cost new fails to establish FMV. Without evidence of what a willing buyer would pay for used goods, the court has no basis to determine value. Additionally, even if FMV were proven, the aggregation rules place Plaintiff's donations in the over-$500 category for each type of property. She was therefore required to provide adequate acquisition and cost basis records,

which she did not.  These failures mean that none of Plaintiff's noncash donations may be deducted.

## III.    CONCLUSION

After careful review of the evidence, the court finds that Plaintiff did not establish the fair market value of her noncash donations and did not meet the substantiation requirements of IRC section 170.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff is entitled to a charitable contribution deduction for the $170 in cash contributions, but Plaintiff is not entitled to a deduction for noncash contributions for the 2020 tax year.

_____
RICHARD D. DAVIS
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Richard D. Davis and entered on September 15, 2025.***